## Bertlee Company, Inc., Appellant, v. Illinois Publishing and Printing Company, Appellee.

### Gen. No. 42,455.

Opinion filed November 17, 1943.

ROTHBART & ROSENFIELD, of Chicago, for appellant; J. M. ROSENFIELD, of Chicago, and EZRA SHAPIRO and ALFRED H. SACHS, both of Cleveland, of counsel.

KURT J. SALOMON, of Chicago, for appellee; FLOYD E. THOMPSON, of Chicago, of counsel on petition for rehearing.

## On Rehearing.

Mr. Justice Burke delivered the opinion of the court.

In a complaint at law filed in the circuit court of Cook county, Bertlee Company, Inc., a corporation, sought damages against the Illinois Publishing and Printing Company, a corporation, for breach of an agreement. The complaint alleged that the defendant was the publisher of the Chicago Herald and Examiner; that in June 1933 the Bertlee Company and defendant entered into an oral agreement wherein the Bertlee Company agreed as follows: To secure 3,000 merchants in a specified area with whom it would enter into contracts whereunder, for a period of one year, said merchants would display in their store windows and places of business in frames furnished by Bertlee Company, current late news photographs known as "Last Minute Photos," whereon the name Chicago Herald & Examiner would at all times be displayed without obstruction and would display only photos supplied by defendant. Bertlee Company further agreed to display and cause to be displayed photos supplied by defendant in windows of 3,000 merchants and agreed not to allow promotional matter of any competing newspaper to be exhibited in any of the frames. It was further alleged that defendant agreed to furnish, supply and deliver to not more than 3,000 merchants under contract with Bertlee Company without any charge or cost either to the company or its merchants, its current late news photographs for display in the stands furnished under their respective contracts daily for six days in each week for a period of one year after the respective dates of each agreement entered into between the Bertlee Company and the merchants. Defendant further agreed that during the term of its agreement it would enter into no similar agreements with anyone else. It was further

alleged that in August 1933 plaintiff and defendant entered into an oral agreement identical in consideration, promises, terms and provisions with the agreement hereinbefore stated, but modified in one respect only. The period during which defendant was to furnish and deliver said photos to merchants with whom defendant might thereafter contract was thenceforth to be two years from and after the date of the execution of each merchant's contract. At that time, by agreement of the three parties concerned, plaintiff Bertlee Company, Inc., a corporation, succeeded to all the rights, privileges and obligations of Bertlee Company, a corporation. In January 1934 the oral agreement was further orally modified as follows: (a) the number of merchants was increased to 4,000; and (b) it was agreed that defendant could at any time notify plaintiff to cease making additional contracts with new merchants and that plaintiff would cease making additional and new contracts with merchants 30 days subsequent to such notice by defendant, it being clearly agreed that such notice by defendant to cease making additional contracts with new merchants would in no wise modify its agreement to furnish and deliver said photos to all merchants with whom plaintiff had theretofore contracted for the full duration of the complete terms of such contracts. In June 1934 the oral agreement was further orally modified in one respect: Defendant agreed to furnish said photos to all merchants without limitation as to number with whom plaintiff might contract. The oral agreements and supplements were ratified and confirmed by plaintiff and defendant through correspondence, conversations, printed or written memoranda, copies of such letters, telegrams and other communications being attached to the complaint as Exhibits A to K. Plaintiff further alleged performance on its part, and that on October 1, 1934, at the request of defendant and without consideration to plaintiff, but

solely in order to enable defendant to reduce its expenses, plaintiff agreed that defendant might furnish said six "Last Minute Photos" each week to each of said merchants by delivering two of said "Last Minute Photos" three times a week to merchants, outside of the city of Chicago, instead of delivering to said merchants outside of the city of Chicago one of said "Last Minute Photos" on each of six days each week. Plaintiff further alleged that on November 19, 1934 defendant notified it to cease making additional contracts with new merchants for the furnishing and delivering of said "Last Minute Photos" from and after December 20, 1934. Plaintiff charged that on December 20, 1934, and from then on, defendant, contrary to its oral agreement and supplements, and notwithstanding plaintiff's protests, failed and refused to furnish and deliver any "Last Minute Photos" to any and all of the merchants with whom plaintiff was under contract prior to December 20, 1934. Plaintiff asked judgment in the sum of $178,142.27 and demanded a jury trial. Defendant answered the complaint, denying the agreements, alleged that the agreements were oral and could not be performed within one year and therefore were void under the statute of frauds, and that it had a right to terminate the agreements on 30 days' notice, which notice was given. The answer denied that plaintiff had fully and completely performed the agreement, and alleged that plaintiff attempted to induce its customers to use photos other than those furnished by defendant. A reply was filed to the answer denying the factual allegations thereof. Thereafter, an amendment to the complaint was filed increasing the *ad damnum* and alleging an additional element of damage. Defendant then filed a motion to strike the complaint as amended, urging as grounds that the agreement could not be performed within one year and was void under the statute of frauds; that the complaint was at variance

with the exhibits; that the complaint and exhibits show that the defendant had a right to cancel the agreement on 30 days' notice; and that the agreement was void for want of consideration and want of mutuality of obligation. The motion to strike the complaint as amended was sustained. An amended complaint was filed and a similar motion to strike was sustained. Then a second amended complaint was filed. The latter was identical to the original complaint and amendment, except that it included only Exhibits A, B, C and I. To the second amended complaint defendant filed an answer substantially the same as its answer to the original complaint and plaintiff filed its reply to the answer. Thereupon, defendant filed a motion for summary judgment, to which plaintiff filed an opposing affidavit. Defendant attached the omitted Exhibits D, E, F, G and H to its answer and motion for a summary judgment. The court sustained defendant's motion and entered judgment against plaintiff and this appeal followed.

A summary judgment can be granted only where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The purpose of the summary judgment procedure is not to try an issue of fact but rather to determine whether there is an issue of fact. The method is necessarily inquisitorial. If there is a material issue of fact, it must be submitted to the jury. The right of the moving party to a judgment should be free from doubt. Plaintiff declares that the record affirmatively shows the existence of genuine, controverted issues of fact, precluding the entry of a summary judgment. We accept defendant's statement that it is the law of this State that where there is a discrepancy or contradiction between the allegations in a complaint and the facts as shown in the exhibits attached to and made a part of the complaint, the exhibits will control. *Bunker Hill Country*

*Club v. McElhatton*, 282 Ill. App. 221, 236. Defendant insists that there was no genuine disputed question of fact for the jury and that the judgment was proper because (1) the contract was unenforcible under section 1 of the statute of frauds since it could not be performed within a year; (2) the contract has not been performed by the plaintiff; and (3) the contract was terminated upon 30 days' notice in accordance with its terms. Plaintiff answers these contentions by asserting that (1) the agreement is not wholly oral but is spelled out in its entirety by the correspondence appearing in the record; (2) it is not established by the record that the agreement, even though it had been completely oral, could not be performed within the space of one year; (3) that the agreement has been completely and fully performed by the plaintiff; and (4) that the right of the defendant to terminate the contract is an issue of fact which plaintiff has a right to have submitted to a jury.

We have carefully read and analyzed the second amended complaint, the answer, the reply, the motion for summary judgment, the exhibits attached to the second amended complaint and to the motion for summary judgment, and the affidavit opposing the motion. Exhibit A is a letter dated June 23, 1933 addressed to the Bertlee Company by the Chicago Herald and Examiner, signed by Mr. Homer Guck, publisher reading:

"We agree to deliver, without charge, within the area approved by the circulation directors of the Chicago Evening American and Chicago Herald and Examiner, one 'LAST MINUTE PHOTO' a day, for a period of one year from July 1st, 1933, to all merchants who purchase Bertlee Display Signs. It is understood that we shall not be obliged to deliver more than three thousand signs per day. It is further understood that we shall have the exclusive right to furnish to you 'LAST MINUTE PHOTOS' for merchants who purchase

Bertlee Display Signs within the territory served by Chicago newspapers, and we agree that we will not make a similar arrangement with any other company during the term of this agreement. It is further agreed that in the display of 'LAST MINUTE PHOTOS' furnished by us no part of the photo or inscription thereon shall be obstructed."

Exhibit B is a letter dated November 15, 1933, addressed to E. J. Engel, Mickelberry Food Products Co., 400 W. Madison St., Chicago, Illinois, signed by A. L. Garber, promotion manager of the Chicago Herald and Examiner, reading:

"This is to certify that the Chicago Herald and Examiner will service all signs sold to you by the Bertlee Display Co. for a period of two years. These photographs are issued daily by the Herald and Examiner and are mailed direct to the addresses furnished to us by the Bertlee Co. each day."

Exhibit C is an office telegram dated December 6, 1933, signed by Mr. E. L. Garber, addressed to Mr. Harry Glickman, president of plaintiff, reading:

"As I mentioned to you earlier in the day, our Circulation Department insists that your men outside of Chicago be called in to your office and be given new territory. We are particularly anxious to have you concentrate in the following towns: [Here the names of 85 towns are listed.]"

Exhibit D is a letter dated January 5, 1934 from the plaintiff to Mr. H. Guck of the Chicago Herald and Examiner, reading:

"  . . .  My purpose in writing you is to acquaint you with the fact that we are nearing the quota set by your paper in our original contract for 'Last Minute Photos.' I would like to suggest the following for your consideration: We would be willing to continue our campaign for your newspaper without

renewing our contract, with the understanding that if at any time you should desire to discontinue you would give us 30 days' notice of such intent on your part. We would desire this stipulation in order to wind up our selling campaign and give us the opportunity of estimating the amount of displays necessary for the territory serviced by your newspaper. It may interest you to know that I have made a survey, while in Chicago and vicinity, and I was more than pleased to find the excellent class of merchants and locations these displays are placed in and I am really convinced that the surface has hardly been scratched. It is my opinion that we could easily, place an additional amount of displays in excellent locations, with the cooperation of your newspaper, as the merchants are grateful to the newspaper for this type of service and are very zealous in changing their 'Last Minute Photos' daily and I am hoping that the same good-will that has been created between the 'News' in New York City and the merchants displaying their photos will be built up between the Herald and Examiner and those merchants receiving your pictures. I sincerely hope that this exploitation feature has been a profitable one and I would also like to state at this time that we are very appreciative of the cooperation given us by your Department Heads, as it has been most gratifying. We are coming out very shortly with a very beautiful new display that any merchant or bank would be proud to place in his window. . . .''

Exhibit E is a letter dated January 15, 1934 from Mr. E. G. Woods, general counsel of defendant, addressed to plaintiff, reading:

"The attention of the publishers of the Chicago Herald and Examiner has been called to your contract which features that newspaper and which contains the following language: 'The Herald and Examiner . . . will deliver by mail or otherwise, daily, a Last

Minute Photo for a period of 2 years from the date of receipt of the "Bertlee Display Sign." ' This representation is not exactly in accordance with the facts. The original contract with the publishers of the Chicago Herald and Examiner was for a period of one year and, under the present arrangement, The Chicago Herald and Examiner can discontinue furnishing the photos by giving the Bertlee Company thirty days' notice. While the contract does not purport to be made by the Chicago Herald and Examiner, at the same time, the wording is such that many persons signing it have assumed that they were entering into an agreement with that newspaper. To illustrate this, we receive checks made payable to the Chicago Herald and Examiner from time to time which are intended to be payment for your service. This situation might prove embarrassing should any controversy ever arise between the Bertlee Company and its customers and should the paper accept the checks tendered them, there might be some question as to the paper's liability. The wording which I have mentioned should be changed to read: 'The Bertlee Display System has arranged with the Chicago Herald and Examiner . . . to deliver by mail or otherwise, daily, a Last Minute Photo from the date of the receipt of the "Bertlee Display Sign." ' "

Exhibit F is a letter dated January 18, 1934 from plaintiff to defendant for the attention of Mr. Edward G. Woods, general counsel, and reads:

"I am just in receipt of yours of the 15th and have arranged with our Chicago office to change the wording of our applications to concur with the paragraph which you suggest, the wording of which will read as follows: 'The Bertlee Display System has arranged with the Chicago Herald and Examiner to deliver by mail or otherwise, daily, a Last Minute Photo from the date of the receipt of the "Bertlee Display Sign." '

We have made it very plain to our Chicago office that under no circumstances should any checks be made payable to the paper and we know of but two occasions where this has occurred and, of course, it will not happen again. The contract with the Bertlee Company is with the newspaper and not the merchant. The paper has no liability to the merchant but has a liability, of course, to the Bertlee Company to carry out its agreement. You can readily see, therefore, that the merchant would want to have some assurance that he will receive this service from the newspaper. That is why the contract is worded to satisfy the merchant to the extent but we feel certain that at no time will there be any controversy regarding the situation and you can be assured that nothing will be left undone by our Company to see that there shall exist only a pleasant relationship between your newspaper and our Company, as is the case with all the other newspapers with whom we do business. Trusting that this adjusts the matter to your entire satisfaction, we remain.''

Exhibit G is a letter dated January 19, 1934, addressed to Mr. Bert F. Levy of plaintiff company, signed by Mr. Merrill Lord of defendant corporation, reading:

''Mr. Guck has turned over to me your letter of January 5th, with regard to an extension of the Bertlee Service. We are willing to extend this from the former maximum of 3,000 clients served to a new maximum of 4,000 clients served, provided the extra thousand clients can be secured in the City of Chicago and within ten to twelve miles from it. We agree to your understanding that, if at any time we should desire to discontinue, we will give you thirty days' notice of such intent on our part.''

Exhibit H is a letter dated January 22, 1934 from plaintiff to the Chicago Herald and Examiner for the attention of Mr. Merrill Lord, reading:

"We are in receipt of yours of the 19th and thank you for same. We understand now that you are extending our contract from the original 3,000 to a new maximum of 4,000. We understand that the additional service is to be secured in the City of Chicago and immediate vicinity. It is agreeable to us, as well, that should you desire to discontinue, you will give us 30 days' notice of such intent on your part. Thanking you for your past courtesies, and assuring you of our appreciation thereof, we beg to remain."

Exhibit I is a letter to plaintiff dated June 15, 1934 signed by Mr. Merrill Lord, reading:

"In accordance with the terms of our agreement with you, please be advised that upon your order we will service any sign placed by you within the area approved by our Circulation Director with 'Last Minute Photos.' We will furnish to holders of such signs six photos each calendar week and will be willing, upon order from you, to continue this arrangement for a period not exceeding two years."

Exhibit J is a letter dated September 7, 1934 from Mr. E. L. Garber, promotion manager of the Chicago Herald and Examiner, to Charles Epstein, Houston, Texas, which reads:

"This will introduce Mr. Harry Glickman who is arranging the distribution of Last Minute Photos in your territory through the Bertlee Display Service. Anything you can do to assist Mr. Glickman will be greatly appreciated."

Exhibit K, an office telegram dated October 10, 1934, from Mr. E. L. Garber to Mr. Glickman, reads:

"A Mr. Mottleman at Wabash 3804 is complaining over the fact that we are sending 3 mailings a week instead of 6. He originally purchased a number of these signs from the Bertlee-Poll Co. Will you please call him up, and see what you can do with him."

In addition to the pleadings and exhibits, plaintiff filed an affidavit by Harry Glickman, its president. This affidavit, after reciting that he has knowledge of the facts, reads:

" . . . that after the entering into of the various agreements as alleged in the second amended complaint filed herein in June and in August, 1933, the plaintiff herein employed numerous and sundry sales representatives to solicit various and sundry merchants throughout areas approved by the Circulation Department of the Herald and Examiner, being a newspaper published by the defendant herein; that with the knowledge and consent of said defendant all contracts made by plaintiff through its said representatives with merchants relating to the furnishing to such merchants of said 'Last Minute Photos' were for a duration of two years from and after the date of the making of such contracts; that the fact that said contracts were all executed for a period of two year service was fully known to and approved by defendant through its various duly authorized agents, including Mr. E. L. Garber, Promotion Manager for defendant.

"Affiant further states that the form of contract used by plaintiff was at all times approved by defendant through its duly authorized representatives; that as contracts were entered into between plaintiff and various merchants the names and addresses of such merchants were furnished to the defendant; that the mechanics of the practical operation of the business transacted between plaintiff and defendant was as follows: at the close of each business day plaintiff delivered to defendant a list of names of merchants with whom plaintiff had entered into a contract or contracts, said list containing the date, the name and the address of each customer obtained; defendant approved said contracts so entered into by plaintiff with said merchants by making up a daily galley sheet, giving the name, address and date of expiration of the

service to be furnished to each particular customer, said date of service always being a date two years next after the date of said contract with such individual merchant; the names of said customers on said galley sheets were made up on an addressograph system and copies of each galley sheet delivered daily to plaintiff who in turn checked said galley sheets against the lists of names theretofore delivered by plaintiff to defendant; that from said addressograph plates or system defendant mailed the Last Minute Photos described in the second amended complaint herein to said customers in a cardboard roll on which was attached for mailing purposes a sheet of paper made from the same addressograph system or machine and containing the same information as set forth on said galley sheets.

"Affiant further states that in all instances said galley sheets and said mailing stickers attached to the cardbord rolls in which said fotos were sent to the customer all contained the expiration date in the lower left hand corner which date was and as hereinbefore set forth always a date two years next after the date of the contract between plaintiff and the individual merchants; that thereby said defendant represented and agreed to furnish said fotos and continue to furnish said fotos for a period expiring on the date set forth on said galley sheets and on said mailing stickers attached to said cardboard rolls.

"Affiant further states that on various and sundry occasions prior to entering into contracts with the plaintiff various merchants questioned whether they would continue to receive said Last Minute Fotos for a period of two years from and after the date of said contract to be entered into with plaintiff and that in all such instances defendant at plaintiff's request forwarded letters to such merchants, the form of said letters being substantially identical to the letter, a copy of which is attached to the second amended com-

plaint as Exhibit 2, being the letter written by the defendant to Mickelberry Food Products Co. dated November 15, 1933 in which said defendant stated: 'This is to certify that the Chicago Herald and Examiner will service all signs sold to you by Bertlee Display Co. for a period of two years. These photographs are issued daily by the Herald and Examiner and are mailed direct to the addresses furnished to us by the Bertlee Co. each day.'

''Affiant further states that he is uninformed as to the exact number of letters similar to said letter forwarded by the defendant to merchants with whom plaintiff had or was about to enter into contracts and prays the advantage of the Discovery and Deposition procedure to ascertain the facts as to the letters of similar kind forwarded by defendant at plaintiff's request.

''Affiant further states that thereafter and on the 15th day of June, 1934, the defendant issued a certain letter to plaintiff being the letter, a copy of which is attached to the second amended complaint as Exhibit 4, for the purpose of allowing plaintiff to photostat the same and give a copy thereof to each of its sales representatives to be used by them to confirm to said merchants that defendant would continue to supply said Last Minute Fotos for a period of two years from the date of such contracts.

''Affiant further states that, as alleged in the second amended complaint herein, the original agreement related to 3,000 merchants with whom plaintiff would enter into contracts; that said 3,000 merchants were not secured until on or about to-wit: the end of the year 1933; that there never was any question concerning cancellation discussed between the parties until January, 1934; that if any dispute exists as to the rights of defendant, such dispute would relate only to the contracts entered into by plaintiff over and above

the first 3,000 contracts, whereas defendant on and after December 20, 1934, refused to deliver said Last Minute Fotos to any merchants or persons with whom plaintiff had contracted, regardless of whether such contracts were entered into prior to January, 1934 or subsequent thereto.

''Affiant further states that after the receipt of the letter of defendant dated November 19, 1934 affiant had a conversation with said E. L. Garber and the assistant of said E. L. Garber, whose name is now unknown to affiant; that said conversation took place in the office of defendant on or about the 25th of November, 1934; that at that time and place said E. L. Garber stated to affiant concerning said letter of defendant that said letter probably only related to new business and had no reference to business transacted prior to the date thereof; that said assistant of said E. L. Garber stated that he did not see how they could refuse to furnish said Last Minute Fotos to the persons with whom contracts had theretofore been entered into since defendant had notified such customers that they would get said fotos for a period of two years.

''Affiant further states that in the previous suit instituted by plaintiff against the defendant herein, being Cause No. 35–C–798 of the Circuit Court of Cook County, Illinois, the precise issue now presented to this court, as to whether or not the defendant had the right to cease delivering photographs in their entirety, was one of the questions referred by said court to Otto C. Rentner, a Master in Chancery who heard evidence on said subject and thereafter filed his report in said cause; that a copy of said report of said Master in Chancery is attached hereto and marked Exhibit A.''

Attached to the affidavit is a copy of a report dated June 18, 1935 in the case of *Bertlee Co., Inc. v. Illinois Publishing & Printing Co.,* Case No. 35–C–798, signed

by Otto C. Rentner, master in chancery, and reading:

"The above case was referred to the undersigned for the purpose of hearing first the motion to strike plaintiff's complaint and in the event said motion be denied then to hear the suit upon its merits. By agreement of counsel for the respective parties to said suit, the undersigned was first to pass upon the defendant's motion to strike plaintiff's complaint. Both defendant and plaintiff argued their respective contentions both orally and by written briefs and submitted numerous authorities to support their contentions. Defendant contended that the memorandum under which the parties operated until defendant ceased furnishing pictures, which were the subject matter of the agreement, did not constitute a valid binding contract, that the same was unilateral and that if a contract did exist that it was later modified to the extent that the defendant might discontinue at any time upon thirty days' notice to the plaintiff. It was agreed between the parties that the defendant did give to the plaintiff a notice thirty days prior to ceasing to furnish any more pictures under the agreement. It was further contended by the defendant the court of equity would not grant relief prayed in the complaint because a decree favorable to the contention of the plaintiff would require constant supervision of the court over which equity would not assume jurisdiction. I find from an examination of the documentary evidence submitted by both parties upon the argument of the motion, that the plaintiff did make a proposal to the defendant in the form of a letter and that the defendant did accept said proposal, and that for a certain period of time the parties did operate under and in accordance with the terms of said proposal and acceptance, both of which documents were attached to the pleadings in the case; that the actions of the parties did constitute a valid and binding contract. That thereafter, upon the request of the defendant, certain changes were

made and certain alterations agreed to between both parties, including the right of the defendant to terminate said contract at any time upon 30 days' notice. The defendant contended that this right to terminate meant the absolute termination of all relations of the contract, while the plaintiff contended that it referred only to any new displays which might be sold by the plaintiff. I find that the actions of the parties clearly show that it was the intention of the parties that said right to terminate should only affect new and additional displays which might be sold by the plaintiff. As to the other points raised by the defendant, they could not be properly determined without hearing the same evidence which would be necessary to establish plaintiff's case. In view of the foregoing I recommend that the motion of the defendant to strike the plaintiff's complaint should be denied.''

We turn first to a consideration of the defense that the action is barred by virtue of the provisions of section 1 of the statute of frauds that no action shall be brought to charge any person on any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith or some other person thereunto lawfully authorized. (Sec. 1, ch. 59, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 55.01].) We are of the opinion that the exhibits substantially show the agreement between the parties. The parties do not agree on the construction to be given to the language employed and some of the terms are ambiguous or susceptible to more than one interpretation. The fact that the language used is capable of more than one construction does not have the effect of bringing it within the statute of frauds. If that were the rule, any written contract containing an ambiguity would be vulnerable to a plea that it could not be per-

formed within one year. In *MacAndrews & Forbes Co. v. Mechanical Mfg. Co.*, 367 Ill. 288, our Supreme Court said (297):

"The intention of the parties is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in arriving at the true meaning of the parties. (*Geithman v. Eichler*, 265 Ill. 579; *Goodwillie Co. v. Commonwealth Electric Co.*, 241 id. 421; *Druecker v. McLaughlin*, 235 id. 367.) In case of ambiguity we may look to the interpretation which the parties themselves have placed upon the agreement for assistance in determining its true meaning. (*Storey v. Storey*, 125 Ill. 608; *Vermont Street M. E. Church v. Brose*, 104 id. 206.) It is also the rule that, where a contract refers to another instrument or to a certain part thereof by specific designation, it is proper that the court know what such provision of the other instrument is. Defendant's letter of September 19 refers directly, and purports to be an answer to, a numbered item in the plaintiff's letter of September 8. Whether it was intended by the defendant that such answer should be construed as a warranty of 24-hour performance by this machine, is to be determined by a construction of these instruments and the conduct of the parties."

All of the essential terms of the contract are set out in the exhibits. We recognize that where a contract rests partly on a written agreement and partly in parol, it is to be treated as a parol contract in determining whether it is within the inhibition of the statute of frauds. Plaintiff also suggests that the contract was completely and fully performed by plaintiff and that under these circumstances the statute of frauds is not available as a defense. Defendant answers that the contract has not been performed by the plaintiff,

calling attention to the obligation of plaintiff to display and cause to be displayed photos supplied by defendant in windows of the 3,000 merchants, and also the agreement not to allow promotional matter of any competing newspaper to be exhibited in any of the frame stands. This agreement of plaintiff did not cover simply the first or second day of the period in question, but was to continue throughout the existence of the agreement. Plaintiff suggests that since defendant canceled the contract it is obvious that plaintiff could not have performed the provision referred to for the full duration of the contract. In view of our finding that the essential terms of the contract are in writing, it is unnecessary for us to decide at this time whether or not the contract was fully performed by plaintiff, or whether because of the refusal of defendant to continue furnishing the photos to the merchants it (defendant) is estopped from relying on the statute of frauds as a defense.

The remaining question presented by the record is as to whether defendant had the right to terminate the contract upon 30 days' notice. Defendant asserts that the contract consists of the exhibits and that a determination of this lawsuit cannot be made except by construing these exhibits; that the trial court construed the exhibits, in the light of the surrounding circumstances shown, to mean that the defendant had an absolute and unqualified right to terminate all of its obligations under the contract by giving plaintiff 30 days' notice of its intention to discontinue the arrangement, and that before this court reverses the judgment of the circuit court we must construe the contract on the record before us and find that the circuit court misconstrued the contract. Plaintiff insists that the record does not show, as a matter of law, that the defendant had an absolute right to cancel the contract. In presenting their positions, counsel for

the respective parties discuss the opinion of our Supreme Court in the case of *Schneider v. Neubert,* 308 Ill. 40. The court said (43):

"Where the language of a written instrument is ambiguous or indefinite, the practical interpretation of the parties may be proved and is often entitled to great weight in arriving at the true intention. (*Armstrong Paint and Varnish Works v. Continental Can Co.,* 301 Ill. 102; Thompson on Trials, — 2d ed. — sec. 1081.) The reason underlying this rule is manifest. It is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract, and a practical construction placed by the parties upon the contract is the best evidence of their intention. Courts have a right to assume that the parties know best what they meant, and if, in reducing their agreement to writing, words or terms have been used that render the contract ambiguous or uncertain, the construction by the parties thereto, as shown by their acts thereunder, cannot help but be of value in ascertaining the true intent and meaning of such contract. (*Sholl Bros. v. Peoria and Pekin Union Railway Co.,* 276 Ill. 267; 2 Elliott on Contracts, sec. 1537.) Before the practical construction given the contract by the parties or evidence of other extrinsic facts is admissible the court must determine that the contract is ambiguous or incomplete. The meaning of language is always a question of fact, but if the words employed can be given but one meaning, if the meaning is so clear that no reasonable man could reach more than one conclusion, it is the duty of the court to decide the question of fact for itself; but if the meaning of the writing is uncertain or ambiguous and parol evidence is introduced in aid of its interpretation, and if, after considering the language in the light of the parol evidence introduced, there remains a doubt of its meaning, then the question of its meaning

must be left to the jury. (2 Williston on Contracts, sec. 616; *Carstens Packing Co. v. Sterne & Son Co.,* 286 Ill. 355.) Where the language used leaves the true intent of the parties in doubt and it is necessary to receive evidence of extrinsic facts and circumstances to determine the intent of the parties, and if such extrinsic facts and circumstances are controverted, then the jury must determine the question of fact, What is the contract? (*Carstens Packing Co. v. Sterne & Son Co., supra; Turner v. Osgood Art Colortype Co.,* 223 Ill. 629). The legal effect of the agreement should never be submitted to the jury. 'Where the contract is ambiguous in any of its terms and the ambiguity can be solved by reference to other parts of the contract or surrounding circumstances which are uncontroverted by the evidence, it is the duty of the court to solve the ambiguity and to declare the true meaning of the contract; but where the ambiguity cannot be solved by reference to other parts of the contract and the surrounding circumstances are controverted, the court should charge the jury hypothetically as to the true interpretation of the contract.' (2 Elliott on Contracts, sec. 1564.) Where the court is unable to determine the true agreement of the parties and it is necessary for the jury to determine what the contract is, the court should submit the question of fact to the jury under proper alternative instructions as to the construction to be given to the contract in the event of each possible finding of fact. (4 Page on Contracts, — 2d ed. — sec. 2063; Thompson on Trials, — 2d ed. — sec. 1079; 13 Corpus Juris 785.) This case should be submitted to a jury under proper instructions.''

This opinion in clear and precise language states the law of this State governing the construction of written contracts. If the contract is unambiguous or uncertain, the construction is a matter of law for the court. Where the contract is ambiguous or uncertain

the practical interpretation placed upon it by the parties may be proved for the purpose of ascertaining the true meaning. Where the language used leaves the true intent of the parties in doubt and it is necessary to receive evidence of extrinsic facts and circumstances to determine the intent of the parties, and if such extrinsic facts and circumstances are controverted, then the jury must determine the question of fact, What is the contract? Conversely, where the language used leaves the true intent in doubt and it is necessary to receive evidence of extrinsic facts and circumstances to determine the intent, and if such facts and circumstances are uncontroverted, the function of construction remains with the court. As announced in the *Schneider* case, the legal effect of the agreement should never be submitted to the jury.

We are, therefore, called upon to determine from the record presented and under the principles announced in the *Schneider* case, whether the court erred in granting a summary judgment to the defendant. The letter of June 23, 1933 from the Chicago Herald and Examiner to plaintiff, evidencing the original contract, obligated the defendant to deliver, without charge, within the approved area, one Last Minute Photo a day for a period of one year from July 1, 1933, to all merchants who purchased Bertlee display signs, defendant not being obliged to deliver more than 3,000 signs per day. There seems to be no dispute that the obligation to deliver ''not more than 3,000 signs per day'' was intended to mean that defendant was to deliver Last Minute Photos to not more than 3,000 merchants per day. Plaintiff maintains that in August 1933 the parties agreed that the present plaintiff should be substituted for Bertlee Company, a corporation, as a contracting party. There does not appear to be any dispute as to this part of the agreement. Plaintiff further contends that in August 1933 the contract of June 23, 1933 was modified in one re-

spect, namely, that the period during which defendant was to furnish and deliver the photos to merchants with whom plaintiff might thereafter contract, was henceforth to be two years from and after the date of the execution of each merchant's contract. The letter of November 15, 1933 from E. L. Garber, promotion manager, to Mickelberry Food Products Company that the newspaper "will service all signs sold to you by Bertlee Display Company for a period of two years," and the facts set out in the affidavit of Harry Glickman would appear to be proper evidence for consideration in support of plaintiff's allegation as to the modification of the original contract.

In January 1934 the contract was amended and extended. The letter of January 5, 1934 from plaintiff to defendant stated: "We would be willing to continue our campaign for your newspaper with the understanding that if at any time you should desire to discontinue you would give us 30 days' notice of such intent on your part. We would desire this stipulation in order to wind up our selling campaign and give us the opportunity of estimating the amount of displays necessary for the territory serviced by your newspaper." Defendant replied on January 19, 1934, stating: "We are willing to extend this [service] from the former maximum of 3,000 clients served to a new maximum of 4,000 clients served provided the extra 1,000 clients can be secured in the City of Chicago and within ten to twelve miles from it. We agree to your understanding that if at any time we should desire to discontinue, we will give you thirty days' notice of such intent on our part." On January 22, 1934 plaintiff wrote defendant: "We understand now you are extending our contract from the original 3,000 to a new maximum of 4,000. . . . It is agreeable to us, as well, that should you desire to discontinue, you will give us 30 days' notice of such intent on your part." Defendant urges that the contract of January 1934,

as evidenced by the writings, is clear and complete and presents no problem of construction; that it (defendant) agreed to deliver Last Minute Photos to clients procured by plaintiff up to July 1, 1934, or until defendant gave 30 days' notice that it desired to discontinue furnishing these photos, and that under the contract its liability to furnish them ceased 30 days after the giving of such notice, and that there is no suggestion in any of the writings prior to June 15, 1934 that defendant was under obligation to furnish photos for any period longer than July 1, 1934, or to the end of the 30 day period after giving written notice. Referring to the letter of January 5, 1934, wherein plaintiff desired the 30 days' notice to "give us the opportunity of estimating the amount of displays necessary for the territory serviced by your newspaper," defendant asserts that the purpose of asking this notice was so that plaintiff might make arrangements with some other publisher to furnish pictures for the display frames put in merchants windows under contracts between plaintiff and the merchants. Defendant inquires "if the stipulation was not for this purpose, then what does the language mean?" Defendant suggests that after the contract between plaintiff and defendant was terminated, it would be none of plaintiff's business how many displays were necessary if defendant had the obligation to furnish the displays to the merchants, and that it was not intended by the stipulation of 30 days' notice that plaintiff might keep on selling during the 30 day period and obligate defendant to furnish displays to merchants for an additional two year period, which would mean that defendant's obligations could not be discontinued for a period of two years and thirty days after it served the notice of its desire to discontinue, and that no such absurd and unreasonable construction could be placed upon the agreement of the parties. Defendant's position as to the language of

the letter of January 5, 1934 is that the word "discontinue" refers to the delivering of the Last Minute Photos, while plaintiff insists that this word refers to the discontinuance of the campaign to obtain contracts from the merchants. The position of plaintiff as to the purpose of the 30 days' notice to give plaintiff "the opportunity of estimating the amount of displays necessary for the territory serviced by your newspaper" is that the word "displays" refers to the display stands in which the photos are placed, and not the photos which were to be supplied by the defendant. Plaintiff points out that it is apparent from the letter that plaintiff wanted the notice for two reasons, namely, to wind up its selling campaign and to estimate the number of display stands that would be necessary in the territory. It is interesting to note that the letter of June 23, 1933 speaks of the photos to be delivered by defendant "to all merchants who purchase Bertlee display signs." It also speaks of the display of the photos. Plaintiff's letter of January 5, 1934 speaks of the "excellent class of merchants and locations displays are placed in," and states that plaintiff "could easily place an additional number of displays in excellent locations with the cooperation of the newspaper, and the merchants are grateful to the newspaper for the service and very zealous in changing the photos daily."

We agree with defendant that the letters exchanged between Mr. Woods, general counsel for defendant, and the president of plaintiff in January 1934 are no part of the contract, but are evidence of the interpretation given the contract by the parties. We also agree with its contention that the letter from Mr. Woods stating that under the arrangement between the parties the newspaper could discontinue furnishing the photos on 30 days' notice, and the reply of plaintiff, constitutes strong evidence in support of defendant's contention that it had a right to terminate the

contract and its obligation thereunder to deliver Last Minute Photos, upon 30 days' notice. The affidavit of Harry Glickman, in opposition to the motion for summary judgment, was directed almost exclusively. to the acts and dealings of the parties while operating under the contract and the course of their conduct thereunder. Mr. Glickman states that plaintiff daily delivered to the defendant a list of the merchants with whom it had entered into contracts; that from these lists defendant made up a galley sheet on an addressograph system on which was set forth the name and address of the merchant and the date of expiration of service to that particular merchant, which was always a date two years next after the date of the contract with such merchant and plaintiff; that the photos were mailed to the customers in a cardboard roll, to which was attached a mailing sticker, made from the same addressograph plate and containing the same expiration date of service; that with defendant's knowledge and consent all contracts made by plaintiff with the merchants relating to the photos were for a duration of two years from the date of such contracts; that the form of contract used was at all times approved by defendant; that on various occasions prior to entering into contracts with plaintiff, merchants questioned whether they would receive photos for a period of two years from the date of contract, and in all such instances defendant, at plaintiff's request, forwarded letters to merchants, the form of letter being substantially identical to the letter attached to the second amended complaint as Exhibit B, from E. L. Garber to the Mickelberry Food Products Company; that he was not informed as to the exact number of letters sent by defendant to merchants with whom plaintiff had or was about to enter into contracts, and plaintiff asked the advantage of the discovery and deposition procedure to ascertain the facts as to letters of similar kind as plaintiff's Exhibit B; that on

June 15, 1934 defendant issued a certain letter, being Exhibit I attached to the second amended complaint, for the purpose of allowing plaintiff to photostat and give a copy thereof to each of its sales representatives to be used by them to confirm the arrangement, pursuant to the contract between plaintiff and defendant, and to confirm to the merchants that defendant would continue to supply the photos for a period of two years from the date of the contracts; that on or about November 25, 1934, after the receipt of the letter of defendant dated November 19, 1934, he (Glickman) had a conversation with Garber and his assistant at defendant's office; that in that conversation Garber stated to Glickman that the letter of the defendant probably only related to new business and had no reference to business transacted prior to the date of the letter; that Garber's assistant stated that he did not see how they could refuse to furnish photos to persons with whom contracts had theretofore been entered into, since defendant had notified such customers that they would get said photos for a period of two years. In his affidavit Glickman stated that the original agreement related to 3,000 merchants who were not secured until on or about the end of the year 1933; that there never was any question concerning cancellation discussed until January 1934; that if any dispute exists as to the rights of defendant, such dispute would operate only to contracts entered into by plaintiff over and above the first 3,000 contracts, whereas defendant on December 20, 1934 and thereafter refused to deliver photos to any merchants with whom plaintiff had contracted, regardless of whether same were entered into prior or subsequent to January 1934. There is force in the argument of plaintiff that the intent of the letter of January 5, 1934 was to afford defendant the opportunity of giving 30 days' notice, should the defendant desire to have plaintiff discontinue making additional contracts with new merchants. In the let-

ter plaintiff is talking about continuing the campaign
and states that it desired the stipulation as to the 30
days' notice in order to wind up the selling campaign
and to give plaintiff an opportunity of estimating the
amount of displays necessary for the territory serv-
iced by defendant's newspaper. There is much to be
said in behalf of plaintiff's contention that the parties
contemplated that the 30 days' notice was desired by
plaintiff not only to wind up the selling campaign to
the merchants, but also to give plaintiff an opportu-
nity of estimating the amount of displays that would
be necessary in the territory. We recognize that the
alleged contract was between plaintiff and defendant.
This contract contemplated other contracts between
plaintiff and the individual merchants, but defendant
was not a party to the latter contracts. Defendant's
alleged contract, being with plaintiff and not with the
merchants, imposed upon it an obligation running to
plaintiff to furnish photos to the merchants. We
are unable to agree with the defendant that the lan-
guage used by plaintiff in its letter of January 5, 1934
and accepted by defendant in its letter of January 18,
1934, clearly shows that the provision granting de-
fendant the right to discontinue on 30 days' notice
must be construed to give defendant the right to dis-
continue furnishing the photos on such notice.

Discussing defendant's letter of June 15, 1934 (Ex-
hibit I) stating that in accordance with the terms of
the agreement the defendant upon plaintiff's order
"will service any signs placed by you within the area
approved by our Circulation Director with Last Min-
ute Photos," and that defendant "will furnish to the
holders of such signs six photos each calendar week,
and will be willing upon proper order from you to con-
tinue this arrangement for a period not exceeding two
years," defendant states that this is the only writing
between the parties which presents any question of
construction; that the letter does not appear to be a

reply to any proposal of plaintiff; that no reply to the letter appears in the record and that the question for the court to decide is whether this letter modifies the expiration period of the contract as evidenced by the other four letters. Defendant further states that there is no consideration expressed for any new agreement of the parties. The affidavit of Mr. Glickman asserts that this letter was given for the purpose of allowing plaintiff to photostat the same and to give a copy to each of its sales representatives, to be used by them to confirm the arrangement with defendant and to confirm to the merchants that defendant would continue to supply the photos for a period of two years from the date of their contracts. This letter is support for plaintiff's contention that in June 1934 the agreement between the parties was modified to provide that defendant would furnish the photos to all merchants without limitation as to number. Defendant's complaint avers that in November 1934, at the time notice was served on it, plaintiff had made contracts with approximately 5,170 merchants.

Attached to the affidavit of Mr. Glickman was a report of a master in chancery rendered in an equity suit between the same parties and involving the issue presented to this court, in which the master found "that the actions of the parties clearly show that it was the intention of the parties that said right to terminate could only affect new and additional displays which might be sold by plaintiff," and recommended that defendant's motion to strike the complaint be denied. Defendant maintains that this report is not relevant, material or competent. The record does not show what, if any, action the chancellor took on the master's report, or whether it was ever filed in that case. We agree that the master's report is incompetent and we have not given it any consideration in passing on the issues presented. Defendant urges that its letter of November 15, 1933 to Mickelberry

Food Products Company (Exhibit B) is incompetent. The letter is signed by the defendant. It is admissible as evidence of the practical contruction of the contract. Defendant further objects to the telegram of December 6, 1933 (Exhibit C), the telegram of October 10, 1934 (Exhibit K) and the letter of September 7, 1934 (Exhibit J), arguing that they throw no light whatsoever on the questions at issue in the case. The case has not been tried. The trial judge will be in a better position than we to determine the materiality and relevancy of these exhibits. These three exhibits do not appear to be prejudicial, nor would they have a tendency to confuse the jury as to the issues. We have not given them any weight in deciding this case. Defendant maintains that the list of merchants with whom plaintiff entered into contracts and the addressograph labels used by defendant to mail the photos to the merchants and which bore the expiration date of the contract between the merchant and plaintiff, are not memoranda in writing, signed by the defendant, and are no part of the contract and should not be considered in determining the meaning of the contract. The contract is ambiguous and parol evidence is admissible for the purpose of ascertaining the true intent of the parties. The matters set out in the Glickman affidavit are admissible as showing the practical construction of the contract by the parties. Defendant objects to that part of the Glickman affidavit which relates the substance of a conversation between him and Garber after the cancellation of the contract. In *Keefer Coal Co. v. United Elec. Coal Companies*, 291 Ill. App. 477, the court said (492):

"So also, the acts of the parties themselves, indicative of their construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement and in this regard it makes no difference whether such acts are contem-

poraneous or subsequent. Moreover, where the contract is, in fact, understood by one of the parties in a certain sense and the other party knows that he so understands it, then the understanding is to be taken in that sense, provided this can be done without making a new contract between the parties. *Smurr v. Kamen,* 301 Ill. 179; *Weger v. Robinson Nash Motor Co.,* 340 Ill. 81.''

We are of the opinion that the alleged conversation between Glickman and Garber is admissible.

Viewing the record in its entirety, it cannot be said that the language employed by the parties can be given but one meaning and that such language is so clear that no reasonable men could reach more than one conclusion. We find that the meaning of the language employed is uncertain and ambiguous. Obviously, it will be necessary to receive evidence of extrinsic facts and circumstances to determine the intent of the parties. On the record made on the motion for a summary judgment it cannot be said that such extrinsic facts and circumstances are uncontroverted. Whether such facts and circumstances will be uncontroverted at the close of the trial, will be disclosed at that time. After a careful consideration of this case, we are of the opinion that the court erred in deciding as a matter of law that plaintiff had no cause of action and in entering judgment for the defendant. As stated in *Gliwa v. Washington Polish Loan & Building Ass'n,* 310 Ill. App. 465, movent's right to judgment in a summary judgment proceeding should be free from doubt. We are not expressing any view as to the merits of the case. Plaintiff is entitled to a trial. This is not an appeal from a judgment entered after a trial on the merits. The trial judge will have an opportunity, after the close of all the evidence, to decide whether or not the extrinsic

facts and circumstances are controverted, and if not, the legal effect of the agreement.

The judgment of the circuit court of Cook county is reversed and the cause remanded with directions to overrule the motion for summary judgment and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

KILEY, J., concurs.

HEBEL, P. J., took no part.