JOSEPH W. GORENZ, Plaintiff-Appellant, *v.* TRUAX-TRAER COAL COMPANY *et al.*, Defendants-Appellees.

Third District No. 76-96

Opinion filed January 11, 1977.

Kavanagh, Scully, Sudow, White & Frederick, of Peoria (Julian Cannell, of counsel), for appellant.

Claudon, Elson & Lloyd, Ltd., of Canton (James E. Lloyd, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

In the action underlying this appeal, the plaintiff, Joseph Gorenz, sought a declaratory judgment against the defendants, Truax-Traer Coal Company (Truax) and Consolidation Coal Company (CONSOL). The

declaration sought by the plaintiff was that he was either entitled to certain commission payments by reason of a contract between the plaintiff and Truax dated August 1, 1954, or that he was entitled to the reasonable value of the services rendered by him, based on a theory of implied contract or restitution. The defendants were granted a summary judgment, and the plaintiff now appeals.

The August 1, 1954, agreement between the plaintiff and Truax provided for the payment of a commission to the plaintiff in the amount of 4 cents per ton of coal shipped to The Central Illinois Light Co. (CILCO), pursuant to a 1953 contract between Truax and CILCO and the same commission for any additional tonnage. This agreement was to continue for 10 years "or until amended by subsequent agreement." It could also be cancelled if Gorenz failed to perform satisfactorily. The last paragraph of this agreement provided as follows:

> "It is understood that Gorenz is currently entering into contracts at this time with United Electric Coal Company and Little Sister Coal Company containing like conditions and compensation, and that Gorenz agrees to handle exclusively the coal of these three producers unless Truax-Traer, United Electric and Little Sister jointly and unanimously agree to have Gorenz handle other coals."

On July 31, 1956, the Illinois Coal and Dock Corporation, which was wholly controlled by, and a sales agency of, Truax, agreed to hire and employ Gorenz to service accounts, to secure proper shipping "advices" and to handle matters pertaining to the solicitation of business and the shipment of coal. The 1956 agreement suspended the 1954 agreement and fixed the plaintiff's salary at $25,000 per year. Furthermore, the 1956 agreement, by its terms, could be cancelled at will by either party, providing there was a 60-day written notice prior to the date of cancellation. However, a letter, also dated July 31, 1956, from Truax to Gorenz indicated that if the 1956 "Employment Agreement" was cancelled or terminated during the life of the 1954 agreement, then the 1954 agreement was to be reactivated. Nevertheless, by the 1956 agreement the plaintiff agreed "to devote his entire time, skill, energy and attention and the best of his ability exclusively to the business of Illinois Coal and Dock Corporation."

Subsequently, on August 16, 1963, the plaintiff entered into another agreement with Illinois Coal and Dock. That agreement indicates that, by merger, Truax became a wholly owned subsidiary of CONSOL. The plaintiff again agreed "to devote his entire time, skill, energy and attention, and the best of his ability exclusively to the business of Company" and that "he will not be employed, directly or indirectly, by, or have an official interest in any other business enterprise, except with the consent of the Company." The plaintiff's salary was set at $25,000 per year

and the agreement was to run "from January 1, 1964 to December 31, 1968." Moreover, the sixth paragraph of this agreement provided as follows:

> "6. It is mutually understood and agreed that this agreement supersedes the agreement dated August 1, 1954 and the employment agreement of July 31, 1956, and such agreements shall be of no further force or effect after December 31, 1963."

In addition, the plaintiff again signed the 1954 agreement, near the added clause "Cancelled by mutual agreement as of December 31, 1963."

During 1966, CONSOL entered into a new coal supply contract with CILCO. This 25 million ton agreement was negotiated by the plaintiff, with shipments from the Norris, Illinois, mine to begin in 1968. Although, the third contract between the plaintiff and the defendant expired on December 31, 1968, the plaintiff claims he continued to administer the earlier Truax-CILCO contract, and Truax continued to ship coal to CILCO from the Fiatt mine, until September, 1969.

The plaintiff demanded additional payments for salaries and/or commissions which he claims he is entitled to receive after December 31, 1968. The defendants refused and this action followed. At the time of this action, the plaintiff is receiving pension benefits from Truax.

■■ The plaintiff argues that the language of the parties' contracts is not clear, and that extrinsic evidence should be admitted to show that the parties intended to compensate the plaintiff for coal shipments made as a result of his efforts. The law is well-established that extrinsic evidence is admissible to show the meaning of words used in a contract where there is an ambiguity or when the language is susceptible of more than one meaning. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) However, a written contract is presumed to contain the entire agreement if, on its face, it appears to be a complete expression of the whole agreement. (*Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 133 N.E. 711.) And it is the court which determines whether the contract is ambiguous or incomplete. *Bertlee Co. v. Illinois Publishing & Printing Co.* (1st Dist. 1943), 320 Ill. App. 490, 52 N.E.2d 47.

■■ We agree with the trial court that there is no ambiguity in this case. The plaintiff entered into an exclusive employment agreement with the defendant which was to terminate on December 31, 1968. The plaintiff is clearly not entitled to a commission since the 1954 agreement, which provided for the commission, was superseded by the 1963 agreement, and in any event, terminated after 10 years in 1964. Nor is he entitled to any additional salary under the contract, since the exclusive employment agreement expressly provided for termination of the agreement on December 31, 1968.

Alternatively, the plaintiff contends that if he is not entitled to commissions or salary by reason of the contract, then he is so entitled under theories of either restitution or implied contract. However, the plaintiff's deposition indicates not only that he knew his services were no longer required by the defendants but also that he did not perform a service for the defendants after December 31, 1968. Not only did the plaintiff's employment contract terminate on December 31, 1968, but Illinois Coal and Docks went out of business on that date. Furthermore, after that date, CILCO, not the defendants, provided the plaintiff with the reports of tonnage shipped. In addition, the plaintiff, aged 68, was already beyond CONSOL's mandatory retirement age of 65 on December 31, 1968. Therefore, we find, from the pleadings and deposition, that the plaintiff provided no services to the defendants from January 1, 1969, to September 1969, there was no benefit to the defendants which unjustly enriched them and the exclusive employment contract of 1963 is controlling.

■■ Restitution is available as a remedy only if one person "has rendered services to another or services which have enured to the benefit of another." (Restatement of Restitution §40 (1937).) In addition, a contract will only be implied by the courts where one person receives a benefit from another. (*Town of Montebello v. Lehr* (3rd Dist. 1974), 17 Ill. App. 3d 1017, 309 N.E.2d 231.) Therefore the plaintiff is not entitled to compensation for any activity he carried on during the period of January 1, 1969 to September 1969. Furthermore, the plaintiff has been paid, as an employee, for any sales contracts he has negotiated for the defendants prior to December 31, 1968, and he has not become entitled to further compensation merely because a contract he negotiated carried over, beyond the duration of his employment contract.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.